**BOYER FORD TRUCKS, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 84–1823.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 11, 1985.

Decided March 25, 1985.

---

Wayne A. Hergott, Minneapolis, Minn., for petitioner.

Joseph Oertel, Washington, D.C., for respondent.

Before LAY, Chief Judge, and HEANEY and FAGG, Circuit Judges.

LAY, Chief Judge.

Boyer Ford seeks review of a National Labor Relations Board order requiring backpay of $80,385 plus interest. The case arises out of a wrongful discharge of an employee, Joseph Chesla. Two issues are raised on appeal. First, Boyer Ford states it made an unconditional offer of reinstatement to Chesla, rather than a conditional offer as found by the Board. Second, Boyer Ford alleges that the backpay award was improperly calculated. We find a lack of substantial evidence on the record as a whole to sustain the Board's finding that the reinstatement offer was conditional. We hold that the offer of reinstatement was not conditional and did in fact toll the time period for which backpay was to be calculated. However, in deference to the expertise of the Board, we affirm its formula for the calculation of backpay.

Boyer Ford is engaged in the business of selling new and used trucks. In 1979 sales personnel of the company created a labor organization known as Professional Truck Salespersons Association. Chesla, one of Boyer Ford's salesmen, was discharged on November 26, 1979. Unfair labor practice charges were subsequently filed against the employer. The charges were upheld by an administrative law judge (ALJ) and, on March 13, 1981, the Board affirmed the decision and adopted the order with minor modification. *See Boyer Ford Trucks, Inc.*, 254 NLRB 1389 (1981). At a later date a consent judgment was filed in this court enforcing the Board's order. A request was entered with the Regional Director in August 1981 to schedule a hearing for backpay.

On March 22, 1982 the Regional Director issued a Backpay Specification after determining that Boyer Ford had not made a valid offer of reinstatement to Chesla. On September 26, 1982 there was a hearing before an ALJ who held that Boyer Ford had not made an unconditional offer of reinstatement at the unfair labor practice hearing on July 1, 1980 and that backpay was due from the date of discharge to December 31, 1981.[1] The ALJ applied the regional compliance director's formula for backpay and awarded Chesla the sum of $85,585 plus interest. The Board affirmed, but modified the order by deducting certain reimbursements, thereby reducing the amount to $80,385. Boyer Ford now seeks review of the order.

---

**1.** December 31 represented the last day of the quarter prior to the issuance of the Backpay Specification on March 22, 1982.

After a careful study of the record, we conclude that a valid offer of reinstatement was made at the time of the unfair labor practice hearing on July 1, 1980. There is no substantial evidence from which to draw a contrary conclusion.

The transcript of the July 1, 1980 hearing reveals that an unconditional offer of reinstatement was made. At the hearing David Morse, the attorney representing Boyer Ford, stated that the attorney for the NLRB, Everett Rotenberry, told him all Boyer Ford had to do was offer an acceptable amount of backpay since Chesla did not want to return to Boyer Ford. At that time, Chesla sought reimbursement of $35,000. Boyer Ford offered a much lesser amount.

On June 30, during the course of the unfair labor practice proceedings, the ALJ had told Morse that in order to cut off backpay an offer of reinstatement would have to be made. Thereafter, Morse was directed by Philip Maas, president of Boyer Ford, to make an offer.

On the morning of July 1, 1980, before Chesla returned to the stand, Morse stated on the record:

MR. MORSE: Before we begin this morning, Your Honor, yesterday we had some discussion off the record about an offer of reinstatement that was made by the respondent to Mr. Chesla. I indicated to you at that time that we would like it placed on the record today.

The reason I did not do it yesterday is that I was uncertain as to the perimeters because of the unique situation we are dealing here with in the form of commissioned salesmen.

At this particular time, we would put on the record the offer of reinstatement of employer to the discriminatee, Mr. Chesla, that was made yesterday. That would include reinstatement under the terms of the existing pay plan as of November 26, 1979, up through and including the date of the new collective bargaining agreement at which time the reinstatement would be subject to the terms and conditions of—

THE JUDGE (interrupting): If he gets back to work today, he goes back to work under the terms and conditions that exist today.

MR. MORSE: Bargaining agreement, that is right.

We find the above statement unequivocal and explicit. It was made at a time when both sides understood that Chesla did not want reinstatement and Boyer Ford did not want him back as an employee. Morse's statement was made in response to the ALJ's direction that to toll backpay Boyer Ford would have to make an offer of reinstatement. That was its only purpose and there was no reason to make the offer conditional. The statement of Morse is clear and unconditional. We fail to see how the Board can hold otherwise.

The Board relies on the colloquy which occurred immediately following Morse's statement:

THE JUDGE: You don't have to put that on the record. Just give me a bottom line figure. You don't even have to do that. If you are offering back pay, just tell us.

MR. MORSE: I guess maybe to simplify it, Your Honor, what we would do is be willing to offer back pay and would make available to the Board of the NLRB such records as would be necessary in order to determine what, exactly, that would be.

THE JUDGE: You are not prepared to make a lump sum offer at this point?

MR. MORSE: We offered, yesterday, the net effect of the draws that he would have gotten under the old plan and the new plan less what he understood—

THE JUDGE (interrupting): Are you willing to put on the record a lump sum offer?

MR. MORSE: Yes.

THE JUDGE: What is that offer?

MR. MORSE: Per the records that we have, the lump sum taking into consideration the draws that he got at Lakeland, based on the activity of his account and the commissions he would have earned

from sales that have come in, we believe we would have netted out, including the Lakeland draw, approximately $4,170 through June 30, 1980.

THE JUDGE: You make that offer at this time.

MR. MORSE: We make that offer of reinstatement and $4,170.

THE JUDGE: Is that what you are saying?

MR. MORSE: In addition, the offer is there to make available to the Board and to work with the Board's representative on records that are available to determine exactly to the penny what that amount would have been.

We believe at this time it would have been $4,170.

THE JUDGE: Very well, you have made your record. Let's get on with the cross-examination.

The ALJ and the Board find that Morse's statement: "We make that offer of reinstatement and $4,170" made the offer of reinstatement conditional on Chesla's acceptance of the $4,170 as backpay. We disagree. We think it clear the earlier offer of reinstatement made by Morse was completely separate from the amount of the backpay settlement.

The Board urges that Morse's statement referring to "the offer of reinstatement * * made yesterday" was ambiguous because no clear offer was made on June 30. Whether it was or not, Morse clearly restated the offer when he added: "That would include reinstatement under the terms of the existing pay plan as of November 26, 1979, up through and including the date of the new collective bargaining agreement at which time the reinstatement would be subject to [its] terms and conditions * * *."

There is no ambiguity in such a statement, nor is it conditional on the acceptance of any lump sum. Chesla already had other employment and it was made known to Boyer Ford that he would not return. Under these circumstances, we think the only logical conclusion is the offer of reinstatement by Boyer Ford was not made conditional. We think the purpose of the offer of a particular sum simply was to comply with the request of the ALJ.

We remand to the Board to recalculate the backpay award in accord with our modification of the date when backpay was lawfully tolled by Boyer Ford's offer of reinstatement. This date was July 1, 1980.

As a matter of deference, we yield to the Board's formula in calculating the amount of backpay.

The Board's order is enforced as modified.

HEANEY, Circuit Judge, dissenting.

In my view, there was substantial evidence to support the Board's view that the backpay offer was a conditional one. I would thus enforce the Board's order.